UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
WILLIAM ORTIZ,                                              :
                          Plaintiff,                        :   **MEMORANDUM DECISION**
                                                            :   **AND ORDER**
              - against -                                   :
                                                            :   18-cv-5869 (BMC)
NANCY A. BERRYHILL,                                         :
                                                            :
                          Defendant.                        :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises two points of error. First, plaintiff contends that the ALJ did not properly evaluate the opinion of his treating psychiatrist in determining his mental residual functional capacity. Second, plaintiff contends that the ALJ failed to properly evaluate plaintiff's testimony. Because the Court finds that the ALJ improperly discounted the opinion of plaintiff's treating psychiatrist, the ALJ's decision is vacated and the case is remanded.

## DISCUSSION

Plaintiff's primary contention is that the ALJ unjustifiably gave "little weight" to the limitations opinion of plaintiff's treating psychiatrist, Dr. Elizabeth Sirota. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).  If the ALJ does not afford a treating physician's opinion controlling weight, he must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion a certain weight are "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted).  If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite his "failure to 'explicitly' apply the Burgess factors." See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019).

Dr. Sirota opined in her April 13, 2017 Mental Impairment Questionnaire that plaintiff suffered from "pervasive symptoms of depression/anxiety/PTSD throughout treatment." According to Dr. Sirota, these symptoms included: anhedonia, decreased energy, suicidal thoughts, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of traumatic experiences, persistent disturbances of mood or affect, emotional withdrawal or isolation, perceptual or thinking disturbances, emotional liability, and sleep disturbances.  Dr. Sirota expressed that plaintiff "will continue to have" these symptoms going forward, which, as a result, will "prevent him from leaving his home often,"

2

give him "difficulty sleeping at night," and frustrate his ability to "maintain a normal daily routine."

Dr. Sirota also opined in the questionnaire that plaintiff was "[u]nable to meet competitive standards" for remembering work-like procedures; maintaining attention for two hours; maintaining regular, punctual attendance; working with or near others without being unduly distracted; making simple work-related decisions; working a full day without interruption from psychologically-based symptoms; appropriately accepting and responding to instructions and criticism; or dealing with normal work stress. And Dr. Sirota believed plaintiff to be "[s]eriously limited" in his ability to sustain an ordinary routine without special supervision, perform at a consistent pace, and respond appropriately to changes in a routine work setting.

As a result of these diagnoses and symptoms, Dr. Sirota concluded that plaintiff had marked functional limitations in maintaining social functioning and in maintaining concentration, persistence or pace. She also concluded that plaintiff would continue to have episodes of decompensation[1] of at least two weeks duration about one or two times per year. She anticipated that plaintiff would be absent from work more than four days per month and that he would be off task due to his psychiatric impairment for 80% of the workday.

If the ALJ had accepted this opinion at face value – or perhaps at even several measures below face value –there is little doubt that he would have found significant limitations in plaintiff's ability to function in the national economy. The ALJ found, however, that Dr. Sirota's opinion

---

[1] As defined in the questionnaire, episodes of "decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace. Episodes of decompensation may be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."

> is not supported by the claimant's treatment records, and it is internally
> inconsistent. [P]laintiff has not had any episodes of decompensation, and
> treatment records show that [he] was able to attend appointments and interact with
> a variety of medical professionals, and advocate for himself to obtain housing and
> other benefits. Ms. Castro and Dr. Siroto [sic] did not provide a narrative
> statement to explain their opinion, and why their opinion differs significantly
> from the claimant's treatment records. For these reasons, I give the opinion of . . .
> Dr. Siroto [sic] little weight.

These justifications are either unsupported by the record or insufficient to so severely discount the opinion of plaintiff's treating psychiatrist as to afford it "little weight." Dr. Sirota's treatment notes reflect that plaintiff had major depressive disorder, anxiety, and post-traumatic stress disorder. And during a March 8, 2017 mental status evaluation, Dr. Sirota reported that plaintiff was poorly groomed; that he spoke in a "non-spontaneous and monotone" manner; was depressed and anxious; and exhibited poor judgment, poor insight, and poor impulse control. These all tend to support Dr. Sirota's opinion, and in any event do not contradict it.

Furthermore, Dr. Deeptha Nedunchezian, plaintiff's treating internist, wrote in her October 27, 2014 treatment notes that patient reported "depressive symptoms including depressed mood, tearfulness, lack of energy and motivation, lack of sleep, lack of appetite, and anhedonia." She also reported that these symptoms were exacerbated by stressors attending both plaintiff's professional and personal life, which comports with Dr. Sirota's opinion. And Dr. Nedunchezian's November 2, 2015 treatment notes state that plaintiff had "chronic post-traumatic stress disorder" and "moderate recurrent major depression," which supports Dr. Sirota's opinion as well.

The ALJ's observation that plaintiff "was able to attend appointments and interact with a variety of medical professionals, and advocate for himself to obtain housing and other benefits" appears to have been his only affirmative justification for assigning Dr. Sirota's opinion little

4

weight. However, that conclusion was overstated. First of all, the ALJ's observations were only half correct: Dr. Sirota's February 24, 2017 treatment notes state that "[p]atient is *semi-compliant* with quarterly psychiatric appointments" (emphasis added), while "often missing/rescheduling appointments." And the ALJ himself acknowledged that plaintiff's "progress in therapy was limited by his poor attendance, and records show he was a no show on several occasions." Second, even had plaintiff fastidiously attended his appointments, it would merely show that he was minimally functional in one small aspect of his life. As plaintiff puts it, "there is a significant difference between . . . what [he] could do on a day-to-day basis if exposed to the demands of full-time work and his ability to comply with treatment that included sporadic, brief office visits." Therefore, this was an insufficient justification for assigning little weight to Dr. Sirota's opinion.

Nor is Dr. Sirota's opinion internally inconsistent, as the ALJ suggested. The ALJ appears to have been making hay about Dr. Sirota's opinion that plaintiff was able to act "appropriately" in public, even though his treatment records show that he had difficulty engaging in social situations. But these aren't necessarily contradictory. "Appropriate" behavior could very easily mean something like non-violent and non-rude, whereas "difficulty engaging in social situations" could mean shy or withdrawn. There is a significant difference between being offensive and being awkward. And this separate understanding of the two is consistent with the other answers given in the questionnaire and the descriptions of plaintiff's behavior and symptoms throughout his treatment notes.

The ALJ also either ignored or failed to explicitly credit other important characteristics of Dr. Sirota's treatment. For example, Dr. Sirota is a psychiatrist and therefore is an expert in the field at issue. Additionally, Dr. Sirota had been treating plaintiff for nearly two and a half years

5

prior to the time of the administrative hearing. Dr. Sirota's treatment of plaintiff also appears to have been extensive, as it consisted of "weekly psychotherapy [and] monthly medication management appointments." These all suggest that the ALJ should have given Dr. Sirota's opinion more weight absent contrary evidence in the record.

Finally, although the ALJ stated that "Dr. Siroto [sic] did not provide a narrative statement to explain [her] opinion," this is not a reason to affirmatively undermine a treating physician's opinion, unsupported by other substantial evidence in the record. See Burgess, 537 F.3d at 128. At worst, it is a gap in evidence that the ALJ should have attempted to fill, given his apparent recognition that a "narrative statement to explain [Dr. Sirota's] opinion" could have assuaged any uncertainty. See Shaw v. Chater, 221 F.3d 126, 131-32 (2d Cir. 2000) (holding that "[f]or the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record."). The gap in this regard is especially significant because the impairments upon which plaintiff claims disability are mental and psychological in nature.

Thus, the ALJ's failure to provide good reasons for giving plaintiff's treating physician's opinion "little weight"is grounds for remand. See Burgess v. Astrue, 537 F.3d at129-30 ("Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999))). Because the Court so concludes, it is unnecessary to reach plaintiff's second argument of the ALJ's failure to properly evaluate plaintiff's testimony.

## CONCLUSION

Plaintiff's [12] motion for judgment on the pleadings is granted in part and the Commissioner's [15] cross-motion for judgment on the pleadings is denied. The Clerk is

directed to enter judgment, remanding this case to the ALJ to further develop the record with regard to plaintiff's mental impairments and reconsider plaintiff's claim in a manner consistent with this decision.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
November 17, 2019